*Wednesday,*
April 6th.

JACOB YOHE *against* WILLIAM and JOHN BARNET, administrators of HENRY BARNET.

A. obtains judgment for a debt against B. his son-in-law, and then dies intestate seised of real estate, and leaving several children among whom is the wife of B. The real estate is divided by inquest into fewer parts than there are children, which are allotted accordingly, under the direction of the law that a bond shall be given by those who take the land

THIS was an appeal from the Circuit Court of *Northampton* county.

*Jacob Yohe* the appellant married a daughter of *Henry Barnet*, and became indebted to his father-in-law in a considerable sum, for which he gave his bond with warrant of attorney. Judgment was entered against *Yohe*, and executions issued against his property both in the life time of *Barnet* and after his death, but without effect; the principal part of the judgment remained unsatisfied, and *Yohe* was insolvent. *Henry Barnet* died intestate; whereupon an inquest of partition was awarded by the Orphan's Court; and his real estate, not being susceptible of a division into as many parts as there were claimants, was appraised by the inquest and ordered by the court to certain of the children and grandchildren upon the terms prescribed by law, viz. upon their giving good security, which in practice is a bond and recognisance, to pay to the other children their equal and proportionable part of the appraised value of the estate. No part of the real estate was ordered to *Yohe* and his wife, who was still living, but he was entitled in right of his wife to one fifth part of the valuation.

to the other children, B.'s wife among the number, for their respective purparts. B. is insolvent, and his debt to A. unpaid. The Orphan's Court may order B.'s debt to be deducted from the amount of the bond for his wife's part, and if necessary to ascertain the amount, may direct an issue.

The bond directed to be given for the purpart of the valuation of real estate is personal property, and attended by all its incidents.

The Courts of Pennsylvania have no authority to insist on a provision for the wife, when the husband applies for her personal property.

The appellees who were sons of *Henry Barnet*, and to each of whom a part of the real estate was ordered, petitioned the Orphan's Court that the money, which by virtue of the inquest and valuation accrued to *Yohe* in right of his wife, might be made payable to them as administrators in satisfaction of *Yohe's* debt; or that it might be secured in some other way for the benefit of *Barnet's* estate. The Orphan's Court decreed against the petition; and the Circuit Court upon appeal reversed the decree, and ordered the distributive share of *Yohe* in right of his wife to be deducted from the sum due on the judgment, and that giving him credit therefor should be deemed a full payment to him in right of his wife.

From this judgment *Yohe* appealed to this court; and the cause was now argued by *Hopkinson* for the appellant, and *Sitgreaves* for the appellees.

For the appellant, two principal exceptions were urged against the judgment of the Circuit Court; 1. That the Orphan's Court had no jurisdiction over the matter of the petition; and 2. That it was against equity to deduct the husband's debt from his wife's share of her father's real estate. There were other exceptions incidentally noticed in the discussion.

1. The Orphan's Court has a limited jurisdiction, and is not left to the exercise of any discretion in the distribution of an intestate's estate. Nothing can be more explicit than the provisions of the law upon this kind of partition; for the only particular in which any thing like a discretion is left to the Orphan's Court, is in limiting the time, not to exceed twelve months, within which the securities for the purpart of the valuation shall be made payable. In what manner can it try the questions which may arise out of this application? Suppose the debt is denied or payment is averred ; where has it the power to summon a jury or to direct an issue? How can it hold plea of set-off? The creditors of *Yohe* are as much interested as the representatives of *Barnet;* how are they to be brought in and concluded by the decree? It is no answer to say they are not interested; for that is the very question. But the matter was no longer before the Orphan's Court at the time of this petition. The partition and appraisement were made, and the order of the court completed, nothing remained but to give the bonds in the manner

1808.

Yohe
*v.*
Barnet.

1808.

YOHE
*v.*
BARNET.

required by law; the court was then *functus officio* as it respect-
ed *Barnet's* real estate. The petition therefore asks the court
for a review of its own judgment, which it cannot grant. Sup-
pose the real estate to have been divided into as many parts as
claimants, how would the petitioners have arrested the allot-
ment to *Yohe's* wife? And can the circumstance of turning
land into money alter the rights of the parties? Personal pro-
perty is paid into court for distribution, and a control over it
may perhaps be exercised; but realty and the bonds which are
given in lieu of realty are subject to no control but that which
is expressed in the law. Courts of general jurisdiction do some-
times contrary to their regular practice expose a fund in their
possession to the claim of a creditor who cannot reach it by or-
dinary process, as in *Horn* v. *Horn*; (a) but they will not bring
a fund within their control for the purpose of doing this.

But what have the administrators of *Barnet* to do with the
real estate? They respresent a debt due to the intestate, and
they pray that the real estate or its representative the bond may
not go out of their hands until the debt is paid. The real es-
tate never was in their hands; it is a distinct fund; and any cre-
ditor of *Jacob Yohe* may as well make the petition as they.
Their being heirs at the same time does not alter the case; for
as such they have no claim upon *Yohe* for any thing.

2. The purpart is the property of *Yohe's* wife; as land no
doubt it would go to her; and the bond is the same as the land.
The court must consider it as given in the wife's name; for in
strictness it should be so. If he dies before it is converted, it is
still hers; if he must apply to the court for it, he must apply for
it as hers; and then two questions arise: first, will the court in-
terfere in this summary way to settle an account between *Yohe*
and the estate of *Barnet*, where the rights of a third person in-
tervene? and secondly, will they allow the wife's property to be
taken out of their hands upon an appeal to their equitable juris-
diction, to pay the husband's debt? To the first question the case
of *Doe* v. *Darnton* (b) is a direct answer in the negative. As to
the second, married women are peculiarly under the protection
of courts. If the husband cannot get at the wife's property but
through a Court of Equity, it will never give it to him but upon
a settlement; *a fortiori* will it not expose it to the payment of
his debts. It is a principle of equity, by which our courts are

(a) *Ambl.* 79.                    (b) 3 *East* 149.

governed as well as a Court of Chancery. The wife at all events has a chance, of which she should not be deprived.

For the appellees, it was contended that the Orphan's Court in its modes of process, of trial, and of enforcing its decrees, is a Court of Equity, and by the act of 1713 has an express grant of power, in the last respect, coextensive with that of " any " Court of Equity." 1 *St. Laws* 98. But the power in question is incident to all courts, who must have a right so to modify their decrees and judgments as to prevent the perpetration of fraud; it is peculiarly so to Courts that proceed upon equity principles, as all the courts in *Pennsylvania* do. The power to try facts either by affidavits, or by directing an issue, appertains to the Orphan's Court as an instrument in the exercise of their express authority. Facts may be disputed upon an application to distribute mere personal assets. Persons may be called before the court either as parties or witnesses, and punished for their default, or concluded by its decree. Every thing that relates to the partition of real estate by an inquest under the act of 1794, is completely within the power of the court. The equity of the partition, the rights of the parties, the nature of the security, and the limitation of the time of payment not to exceed twelve months, are all matters for the discretion of the court; the question then is, has it in this case exercised a legal discretion? The administrators here are likewise heirs, and therefore they would be competent to litigate a dispute concerning mere real estate; but real estate is out of the question; by the law it has been converted into personal property. If the bond is given, he will sue them in their individual capacity, and of course they cannot set off the debt which belongs to them as administrators; the only point is, should the court arrest the bond, or order it to be so drawn as to compel *Yohe* to do justice? If the money had been an advancement to *Yohe's* wife, it must have been brought into hotchpot, and his purpart by so much diminished. Is he to be favoured in equity because it was a loan? If *Barnet's* estate had been altogether personal, the administrators might have retained for the debt. Are they to be worse off because part is real estate, and yet *Yohe's* interest in that estate has become personal property? He can come at his right only by an order of the Orphan's Court, and then by all the rules of equity they may and ought to impose terms on him.

His debt is to the same estate upon which he makes his claim; a technical rule of law which distinguishes real from personal estate is all that prevents us from doing ourselves justice; is this to be adhered to in aid of a fraud? The Orphan's Court itself has often deviated from the letter, to do justice; it has ordered the bond to be given to the heir of the assignee. If a plaintiff cannot find effects of the defendant to satisfy his judgment, a court of common law will order the sheriff to pay over money which he has levied in another case at defendant's suit. *Armstead* v. *Philpot.* (a) There is no other way of getting at it, which is our difficulty, for it cannot be taken in execution. *Turner* v. *Fendall.* (b) So under the general jurisdiction of the court, they will allow A to set off a judgment against B and C, against a judgment by B alone. *Mitchell* v. *Oldfield* (c) The case is not within the statute, but it is an equitable interposition to prevent injustice. *Gurish* v. *Donavan.* (d) So where an insolvent debtor has effects which cannot be reached, equity will expose them to the demand of a creditor after he has exhausted his remedies at law. *Edgell* v. *Haywood* (e), *Balch* v. *Wastall* (f), *Smithier* v. *Lewis* (g). In these cases the funds were not in possession of the court; on the contrary *Edgell* v. *Haywood* was the case of a legacy in the hands of an executor whom the court ordered to pay the plaintiff's debt. But in our case the funds were still under the control of the court, for until the bonds are given the matter is undetermined.

Then as to the wife's interest. This bond is to no intent or purpose real estate; if it were, it should be given to the husband for life; and he, like all other tenants for life of money, should give security. It is personal property; and there is no instance known in our practice of a court's demanding a provision for the wife as the condition upon which they will assist the husband to her money. It is a rule in Chancery, but unfortunately without precedent among us. The bond is the husband's; it is given to him in right of his wife; he may assign it in payment of his debts; he may sell it and squander the money; the merest act will amount to a conversion; and if she dies be-

(a) *Doug.* 219.
(b) 1 *Cranch.* 136.
(c) 4 *D. & E.* 123.
(d) 2 *Atk.* 165.

(e) 3 *Atk.* 352.
(f) 1 *P. Wms.* 445.
(g) 1 *Vern.* 398.

fore him, he will take it whether it be in her name or his own, as administrator. His title to all her personal estate is exclusive. His right to administration depends upon and follows his right of property. And it is then merely a possibility that the wife may survive, that is to defeat the equity of the appellees; it is still less, it is a possibility that the husband shall die living the wife, before the bond is paid; for the heir may choose to pay it any time after it is due. But finally there is no equity in the wife's claim. She has already received the benefit of her purpart in the loan to her husband. It has proceeded from the same fund upon which she must make her claim; it has diminished it to a greater amount than her claim; and it is against equity that even for the wife herself the claim should be enforced.

TILGHMAN C. J. This case comes before the court on an appeal from the Circuit Court of *Northampton* county, who reversed the judgment of the Orphan's Court of the same county.

*Jacob Yohe* married one of the daughters of *Henry Barnet* deceased; and his wife is living. He became indebted to the said *Henry Barnet* by bond, which was put in suit, and judgment obtained on it by the said *Henry* in his life. Part of this judgment has been paid; but a considerable balance remains due, and *Jacob Yohe* is insolvent. After the death of the said *Henry Barnet*, his land not being capable of a division among all his children without injury, was by order of the Orphan's Court assigned to particular children, who were to pay to the other heirs the amount of their share of the valuation of the land in money. The share of the wife of *Jacob Yohe* was one fifth part of the valuation, which was to be secured by a bond to be given to the said *Jacob Yohe* in right of his wife. The other heirs of *Henry Barnet* petitioned the Orphan's Court for an order to deduct the balance due on the judgment against *Jacob Yohe*, from his wife's share of the real estate which was to be secured by bond as aforesaid. The Orphan's Court adjudged that the prayer of the petition could not be granted; and the Circuit Court decided on an appeal that the petition should be granted. Many exceptions were taken to the judgment of the Circuit Court, but on the argument they were reduced to two.

1. That the Orphan's Court had no jurisdiction to act on the matter of the petition.

1808.      2. That it was unjust to deduct the husband's debt from the
Yohe      wife's share of her father's real estate.
v.           1. In supporting the first point it was urged, that the Or-
Barnet. phan's Court had no authority but what they derived from the
act of Assembly directing them to make partition of the intes-
tate's estate; and that in case of a dispute they have no mode of
ascertaining the amount of a debt. But there are cases in which
the Orphan's Court must take upon themselves to decide facts
incidental to the partition of an estate. For instance, if a dispute
should arise concerning the amount of an *advancement* made
by the intestate in his life to one of his children, partition cannot
be completed till this amount be ascertained. If necessary, facts
may be ascertained by a jury; so that there seems to be no dif-
ficulty in surmounting this part of the objection. If instead of
a debt due from *Yohe* to his father-in-law, he had received from
his father-in-law an advance of money in part of his wife's share
of the estate, there is no doubt but the Orphan's Court could
and must have deducted the amount of the advance. The case
of a debt, to be sure, is not quite the same; although in fact this
debt has drawn as much from the estate of *Henry Barnet* into
the hands of his son-in-law, as if it had been an actual advance.
But inasmuch as *Yohe* cannot come at his wife's share without
the aid of the Orphan's Court, I see no reason why that court
may not deduct what appears to be due from him to the other
heirs, in a case like the present, where if he once gets hold of
the money or the bond, there is reason to fear that payment
of his debt will never be obtained. I speak now, taking it for
granted that *Yohe* is entitled to receive the amount of his wife's
share, which is the second point for consideration.

2. The Orphan's Court have ordered that a bond should be
given to *Yohe* in right of his wife for the amount of her share.
It is said, and not without great plausibility, on the part of the
appellant, that this bond being given in lieu of land, ought to be
considered as the property of the wife; that if the bond was
passed immediately to her, and she should survive her husband,
it would be her absolute property, and that it is hard to deprive
her of this chance. There certainly may be hardships in cases
of the kind, which probably the legislature were not aware of,
when they directed the mode of partition. But we must take
the law as we find it written. There is no ground for saying

that the share, thus directed to be paid in money, remains for any intent or purpose, of the nature of real estate. It is converted completely into personal property. The bond would be altogether in the power of the husband. He might release it, assign it, or dispose of it in any way he thought proper. It is to be regretted that the courts in this state are not vested with the power exercised by the Court of Chancery in *England*, of insisting on some provision for the wife, when the husband applies to them for the purpose of getting possession of her personal property. But we have no trace of any such exercise of power by our courts. It must be taken for granted then, that they possess no such power. That being the case, *Jacob Yohe* appears to be substantially the owner of his wife's share. If it was payable in cash he would have a right to demand it; and being in fact no more than money to be secured by bond payable in a time to be fixed by the Orphan's Court not exceeding twelve months from the partition, I am constrained to consider it as his property.

I am therefore of opinion that the equity of this case demands that the balance due on the judgment against *Jacob Yohe* should be deducted from his wife's share, and that the judgment of the Circuit Court be affirmed.

BRACKENRIDGE J. concurred.

YEATES J. and SMITH J. gave no opinion, as the appeal was from their decision.

Judgment affirmed.