The opinion of the court was delivered by
Rogers, J.
The testimony would have justified the jury in finding, that Mary Starrett had been abandoned by her husband, Samuel Gibson. The fact of abandonment as being found by the jury, raises a question of some novelty, as well as of great importance to feme coverts, whether property acquired during the time of the desertion, can be disposed of by the wife, by will, or otherwise. In other words, is property acquired under such circumstances separate estate, and, as such,' subject to her disposition? It is. conceded, that the control of the husband over the personal property of the wife, during coverture, is an important privilege, and well established right, of which he cannot be deprived, but by his own act or agreement. The acquisitions of the feme covert, inure to the benefit of the husband, as when a bond is given to the wife, he may sue alone. A gift or legacy to the wife, and even the rewards of. her personal labour, during coverture, vest in the husband, and he may release them. As the law imposes the *133 obligation of maintaining the wife; and also endows her, it is but reasonable that he should have the advantages which, arise from the relation of marriage. But, although these are conceded as general principles, yet the exigencies of society, and experience, have introduced several exceptions. Thus, when a husband is exiled, his wife is permitted to sue in her own name. Co. Lift. 132. n. So, also, when the husband has abjured the realm, in such cases, she is permitted to claim her land, without her husband, and is'exempted from the disabilities of covertures. She may maintain trespass, may sue for her jointure, and may also be sued as a femé sole. And, as in thp case of The Countess of ■ Rutland, against Rodgers, she may make a will, and may, in all things, act as a feme sole, and as if her husband was dead, and this from the necessity of the case. . These cases, which are put by way of example, show the great relaxation which has taken place from the rigidity of the ancient rules, which are relaxed from necessity, or where the reason of.the rule has ceased to exist. The question, then, arises, when the husband has abandoned his wife, separated from her, without affording her support, does his marital right still continue so as to give him an absolute property in her acquisitions. Unless some positive rule of law intervenes,I policy and humanity would require, that, as he has. cut himselfj loose from the duties, which the relation of marriage imposes, hel shall not be allowed its advantages. His conduct would amount to a virtual surrender of his rights. Why should she not be permitted, by industry and management, to acquire property for herself and family? Why should she be liable to plunder, at the will and pleasure of a brutal and*unfeeling husband, who, perhaps, has deserted her without cause, and returns for the purpose of seizing on her hard earnings? A husband goes off with an adulteress, and continues absent for years; in the mean timé, the wife, by industry, and the assistance and compassion of friends, acquires property, and she disposes of it by will, which the husband endeavours to wrest from the objects of her bounty. Such cases have, and will again arise, and it- should be an unbending principle of law, which woukTsanetion such injustice. It is said, that she may obtain a divorce: but why should we compel a woman, deserted by her husband, to sue for a divorce?. Although abandoned, they do not always cease to cherish an affection for a worthless husband; besides, some wives áre principled against divorces, nor should they be compelled, in order to aVo.id injustice, to resort .to such a remedy. They are sometimes stimulated to exertion, by a hope, that the acquisition of property may be a mean of reclaiming the husband, or, at least, in case of a subsequent union, of preventing ill treatment.
It is granted, that a husband may by express or implied agreements, renounce his marital rights, and vest property acquired by the wife as her separate property, and this where the husband is in *134 the strict performance of all his duties. Thus, in Slanning v. Style, 3 P. Wms. 338, a husband, voluntarily, and after marriage, allows his wife, for her separate use, to make profit of all butter, eggs, pigs, poultry^ and fruit, beyond what is used in the family; out of which the wife saves one hundred pounds, which the husband borrows, and dies; the court will allow this agreement to encourage the wife’s frugality, and the wife ¿.ball come in as a creditor for the one hundred pounds. So, also, in Calmedy v. Calmedy, cited and-approved of in Slanning v. Styles,--r-where the husband agreed that the wife should take two guineas of every tenant that renewed a lease with the husband, the fine which the husband received, this was allowed to be the wife’s separate money. So, also, in Magrath v. Roberts’ Administrators, a wife may become a sole dealer, or trader, by permission of her husband, even withput deeds, and shemay become entitled to all her earnings, as her separate estate. But it is said, that here there is neither an agreement express or implied. To which it may be answered, that it Icannot be supposed that the husband intends his wife to starve; and, las he has voluntarily withdrawn his support, it is a fair presumption that he has consented to her using her own exertions to maintain herself. But whether this be a strained presumption, it is immaterial to inquire, as the court are of opinion that the desertion of the husband, and a cessation of his w.onted duties, vest a separate property in the wife, in the acquisitions made during the time of the desertion. Nor. does this opinion rest altogether on abstract reasoning. , It has the benefit of an express decision, in which the principle we have been supporting is fully recognised. Cecil and Wife et al. v. Juxon et al. 1 Atk. 278. The defendant, Emanuel Juxon, some few years after his marriage, left his wife and two small children, and went abroad, and did not see them for fourteen years; the wife’s mother, during this time, intrusted her with millinery and other goods, and permitted her to maintain herself and children out of the profits. The husband, upon his return, breaks open the wife’s house, and takes away all her goods, and produce of the stock so lent as aforesaid. The bill was inter alia brought for the re-delivery of the goods. The court decided, that what the wife has acquired in her husband’s absence to subsist herself and family, is her separate property, and is not liable to the disposition of the husband. Sir Joseph Jekvll, in delivering the opinion of the court, says; that as the desertion of the plaintiff, Emanuel Juxon, was fully proved, the court would look upon any thing acquired by the wife in his absence, for herself and family to subsist upon, as her separate property, and not liable to the disposition of the husband, when he should please to come home and plunder her, and therefore declared that the plaintiff, Mary Juxon, was entitled to the goods that were in her possession, and also to the stock in her separate trade, before the same were taken away by" the defendant for her separate use.
Judgment reversed, and a venire facias de novo awarded.