# Rees *against* Waters.

Neither a court of equity nor a court of law, in Pennsylvania, will lend its aid to a husband who has deserted his wife, to enable him to recover her choses-in-action, without making a suitable provision for her maintenance; unless he had, previously to the separation, reduced them into possession; and the principle is the same with regard to her real estate.

But if a husband take possession of his wife's real estate and make valuable improvements upon it, there is no power either in a court of law or equity to restrain his control over it.

ERROR to the district court of *Allegheny* county.

David Rees against Humphry Waters and Acha, his wife. This was an action of ejectment, for 51 acres of land, which was the estate of the defendant's wife. The plaintiff gave in evidence a judgment against Humphry Waters, for 700 dollars, a *fieri facias* upon it, a levy upon the land in dispute, which was valued at 100 dollars per annum, and a *liberari facias,* upon which the possession thereof was delivered to him.

: The defendant offered to prove that the said judgment of the plaintiff was fraudulently confessed by Humphry Waters, for the purpose of depriving his wife, whom he had deserted, of her estate: that he had sold all her personal effects, and fraudulently conspired with the plaintiff to turn her out of possession of her land, and leave her without a support.

The plaintiff objected to this, on the ground, that it was an offer of the defendant in a collateral suit, to avoid the validity of a judg-

[Rees v. Waters.]

ment against him, by alleging his own fraud. For if the plaintiff's claim be avoided, the defendant thereby becomes the owner of the. life estate, and may convey it to another, in as much as there has been no divorce.

The court below overruled the objections and permitted the evidence to be given.

The proof was that the land was the property of the wife, that she and her husband had resided upon it about a year, during which time he had made some improvements. That he was very intimate with David Rees, the plaintiff, that they were labourers, and had lived and worked together many years previously to the marriage of the defendants; much evidence was given by each party as to the consideration of the judgment, and one witness said he was present and made a settlement between the parties, in which there was a balance due the plaintiff equal to the amount of the judgment. The defendant had sold all his wife's personal effects, and after having otherwise maltreated her, he deserted her.

The court below, after cautioning the jury to guard against the exercise of that feeling which might readily be awakened, by even a suspicion of the truth of the allegations made by the defendants, said, in substance, that fraud must not be presumed, but like all other matters of fact, may be established by circumstantial evidence; that if they were satisfied by the evidence, that the judgment and proceeding of the plaintiff was wholly collusive and fraudulent, and instituted for the purpose of taking the rents of the property for the use of the husband, who has abandoned his wife and turned her out of possession; that a chancellor would in such case entertain a bill at the instance of the deserted wife, and enjoin the husband from proceeding at law in this ejectment. It is every day's practice in the courts of Pennsylvania, to grant equitable relief to the defendant, when the plaintiff in ejectment has the legal title, and defendant has such an equity as to induce a chancellor to enjoin the plaintiff from a recovery. And we can see no good reason why the same relief should not be extended to a case like the present, if you find the allegation of defendant supported by the testimony.

*Shaler*, for plaintiff in error, cited *Clan. on Mar. Women* 161; 17 *Serg. & Rawle* 363; 2 *Stark. Ev.* 630.

*Lowry*, for defendant in error, cited *Clan. on Mar. Women* 448, 560; 6 *Johns. Cha. Rep.* 178; 1 *Page* 261; 4 *Johns. Cha. Rep.* 322; 5 *Monroe* 341; 5 *Johns. Cha. Rep.* 464, 473; 5 *Page* 582; 2 *Vez.* 452, 666; 5 *Vez.* 517; 4 *Page* 74; 6 *Johns.* 25; 1 *Dessau.* 200; 2 *Dessau.* 50; 17 *Serg. & Rawle* 130, 298.

The opinion of the court was delivered by

Rogers, J.—The interest which the husband has in the property

[Rees v. Waters.]

of the wife, may be modified and restrained by a court of chancery, by requiring him to make a settlement in favor of his wife and children.   The rules which govern the court, have been well considered in Henry *v.* Udall, 5 *Johns. Chan. Rep.* 464.   The wife is entitled to a suitable provision for the maintenance of herself and children, out of her separate estate, real, or personal, descended and devised to her during coverture.   Thus equity prevails, equally against the husband or his assignee, or against any sale made, or lien created by him, even for a valuable consideration, or in payment of a just debt, and whether the suit in protection of that equity be by the wife, or by any other person in her behalf.   Haviland *v.* Myers, 6 *Johns. Chan. Rep.* 178.   A suit to protect that equity may be instituted by the wife, against a creditor at law, and this equity, if the case be deemed to require it, may be extended to the whole of the real and personal estate devised or descended to the wife.   This equitable right, as is said in the earlier decisions is confined to cases where the husband, or his assignee, had no title at law to recover the wife's property, as when it was an equitable interest.   As they are obliged to apply to a court of equity for the recovery of it, the court will impose terms upon them.   It will stipulate as the consideration for lending its assistance, that a provision shall be made out of the fund, or out of the husband's other property, for her.   It was afterwards ruled, (for the court of chancery has been very cautious in assuming the jurisdiction,) that the court would enforce her right at her own suit, by her next friend, when the subject was of equitable, not of legal, cognizance.   And again: Mr. Clancy, in his Treatise on Married Women 464, insists, on the authority of adjudged cases, that this equity is not confined to her equitable, but extends to her legal, choses in action, but Strong's case, where, in the notes, the reasoning of Mr. Clancy is cited with approbation.   But, however, this may be, yet it is clear, that the equity does not attach, except on that part of the wife's fortune, which the husband cannot acquire, without the aid of either a court of equity, or a court of law, either to her equitable, or legal choses in action, to what has been termed her equitable separate property.   If the husband can acquire possession of her estate, without a suit either at law or equity, the husband will not be disturbed in the exercise of his marital rights.   This principle is asserted, but in its most restricted sense, in Howard and Wife *v.* Moffit, 2 *Johns. Chan. Rep.* 206.   It is there ruled, that if the husband can lay hold of the property of the wife, without the aid of the court, he may do it; the court of chancery not having the power to enforce a settlement, by interfering with his remedies at law.   This equity is administered to the wife, when she had not been sufficiently provided for.   A court of equity will also protect the wife when she has been deserted and abandoned by her husband, without any suitable or adequate support.   Haviland *v.* Myers, 6 *Johns. Chan. Rep.* 178.   But the

[Rees v. Waters.]

interposition of the court must be restrained to those instances, where the husband cannot acquire possession of her property without a suit, either at law, or in chancery, and where, as I apprehend, the husband has never been in the possession of the property. For, except in these cases, a court of equity has no authority to decree alimony to the wife, although she may be left without any other adequate means of maintenance. Mr. Justice Story, in his commentaries, says, that although it is clearly the duty of the husband to provide a suitable maintenance for the wife, if it is within his power, yet it is not an obligation of duty, of which a court of equity will decree a specific performance, by directing in such a case a separate maintenance. The proper remedy is an action in a court of common law, to be brought against the husband, by any person, who shall, under such circumstances, supply the wife with necessaries, according to her rank and condition; for, by compelling the wife to leave him, or he having left her, the husband sends her abroad with a general credit, for her maintenance. Or if this reliance should be precarious, the wife may make application to the ecclesiastical court, for a divorce *a mensa et thoro,* or for a restitution of her conjugal rights; and as incident thereto, (but as it seems, not as an exercise of original jurisdiction,) the latter court may pronounce a decree for a suitable alimony. They have no general jurisdiction in relation to the matter, and their interference is confined to those cases where the wife has an equitable property within the reach of the jurisdiction of the courts of equity. In such a case, where the husband has deserted, or ill treated his wife, they will lay hold of it and decree her a suitable maintenance out of such equitable funds. The relief would seem, according to this, to be confined to the wife's equities, but, perhaps, the better opinion is, that equity will interpose, when the husband, or his assignee, is seeking at law, to recover the wife's legal choses in action. These are acknowledged principles of equitable jurisdiction, as will be seen by reference to the authorities cited at the bar; but as we have no court of chancery, it has been, I think, unfortunately held in Yohe *v.* Barnitz, 1 *Binn.* 365, that the equitable power does not exist in this state. Chief Justice Tilghman says: " It is to be regretted that the courts of this state are not vested with the power, exercised by the courts of chancery in England, of insisting on some provision for the wife, when the husband applies to them for the purpose of getting possession of her personal property. But we have no trace of any such exercise of power by our courts. It must be taken for granted, then, that they possess no such power." It is true that we can not afford the wife specific relief in the same manner and to the same extent, as it could be administered to her by a court of equity. But this defect arises from the non adaptation of common law forms alone, for it has been ruled, that equity is part of the law of this state, and in many cases decided; since Yohe *v.* Barnitz, equi-

IX.—I

[Rees v. Waters.]

table relief has been freely given, so far as could be done, consistently with these forms.   On principles pertaining to a court of equity, we have ruled that if a husband deserts his wife, and ceases to perform his marital duties, the acquisitions of the wife during such desertion, are her separate estate, and she may dispose of them by will or otherwise.   Bonslaugh *v.* Bonslaugh, 17 *Serg. & Rawle* 130.   The legislature have also manifested their sense that some additional security was required for the rights of *femes covert,* by the act of the 29th of March, 1832, in case of partition of her real estate; and where her share is converted into money.   The great difficulty under which we have heretofore labored for the want of proper machinery to carry out equity principles, is removed by the act of the 16th of June 1836, which makes it the duty of the Supreme Court, at their sessions in bank from time to time, to devise and establish, by rule of court, such new writs and forms of proceeding, as in their opinion, shall be necessary or convenient to the full, direct, and uniform execution of the powers and jurisdictions possessed by the said court, or by the courts of common pleas, district courts, orphans' courts, or register's courts.   But I am not aware, that there is any insurmountable difficulty here; for, where a suit is brought to recover, either equitable or legal property belonging to the wife, the court may lay their hands upon the action and prevent a recovery, unless upon the just and equitable terms of making a suitable provision for the wife.   If this, therefore, is a case where a court of chancery would relieve the wife, or where they would arrest the proceeding at law, by an injunction, the same thing can be done in this state, by preventing a recovery except on terms; and in this view of the case, I declare not only my own, but the opinion also of my brethren.   It remains, then, to inquire whether this is such a case, as would call for the interference of a court of equity.   By the common law, marriage operates as an absolute gift to the husband of all the personal property of the wife, which was in her possession at the time of the marriage.   He takes it free from any right of survivorship in the wife; he may dispose of it in any way during his life, or bequeath it at his death, and if he makes no disposition of it, his personal representative, and not his wife, though she should survive him, shall have it.   The husband also gains an estate of freehold, in the inheritance of his wife, in her right, during her life.   They are jointly seised, in right of the wife, but notwithstanding this, the husband has the power of creating a freehold in her inheritance, without her being a party in the conveyance, or in other words, of conveying the freehold without her consent.   He has the absolute power of disposition of the life interest, which he has in her inheritance, as absolute an authority as he has over her personal chattels in his possession.   On the marriage, as to both species of property, it is, *ipso facto,* vested in him, and he does not require the aid of any court of law, or equity, to

[Rees v. Waters.]

establish his claim to it, or to invest him with the possession. Now as to the personal estate, it is an admitted principle of equitable jurisprudence, that where he can obtain the possession of it, without a suit, either at law or equity, or where he has been in possession, the husband will not be disturbed in the exercise of his marital rights. And there can be no reason why the same principle should not be applied to her chattels real, and to the interest which he acquires in her estate of inheritance. And how does this case stand? The wife was the owner of the land at the time of the marriage. The husband took possession, and made valuable improvements upon it. He does not need the aid of any court, in order to its full enjoyment and possession, which he can assert at any time, as against his wife, or any other person. There is, therefore, no ground upon which the general jurisdiction of a court of chancery can attach. It is true, that the law, which gives the property of the wife to the husband, imposes upon him the obligation of maintaining her. But this obligation will only allow the court to fasten upon the equitable property of the wife, or upon her choses in action, when it is necessary to call in the aid of a court of law to recover them. The case of Haviland and Others *v.* Myers, differs from this case in two particulars. There the property descended to the wife during coverture, of which it does not appear that the husband ever had the possession, and besides, there was a decree, *a mensa et thoro,* although the Chancellor does say, that her claim to protection, did not rest upon the mere equity of the wife to a suitable provision, out of her separate estate. It is not to be supposed that it was intended to interfere with the principles decided in Howard and Wife *v.* Moffit, 2 *Johns. Chan. Rep.* 206. In addition to the relief which the court would give the wife, in a proper case, as above indicated, she has, in this state, three remedies. 1. By procuring necessaries on the credit of the husband. 2. By an application to the court of common pleas for a divorce *a mensa et thoro,* and alimony, and thereby, under the 29th section of the act of the 13th of June 1836, which provides, that if any man separate himself from his wife without reasonable cause, two magistrates may direct a warrant to the overseers, authorising them to take and seize so much of the goods and chattels, &c., as shall be sufficient for the wife, and to maintain and bring up their children. If she thinks proper to pursue any of the remedies pointed out, a fraudulent assignment of the property will not protect it from the just claim, for the maintenance and support of the wife and children. It is with the greatest reluctance, that an attentive examination of the authorities, has brought my mind to this conclusion, but I am compelled to say, that the judgment must be reversed.

Judgment reversed, and a *venire de novo* awarded.