# Smethurst et al. *v.* Thurston et al.

[FEBRUARY 16, 1848.]

The settlement, by one who is insolvent, of his wife's fortune in trustees, for her separate use, cannot be impeached by creditors of the husband.

Until a husband reduces his wife's choses in action into possession, his creditors cannot touch them: and if he declines to do so they have no right to object.

BILL IN EQUITY—presented by Richard Smethurst, William King and Edward W. David, trustees of the estate of Charles Connor Barrington, against Charles M. Thurston, the said Charles Connor Barrington and Rachel H. Barrington, his wife, praying that a bond and mortgage given by C. C. Barrington to C. M. Thurston, might be declared to be void, and delivered up to be cancelled.

It appeared that, in December, 1843, C. C. Barrington married Rachel H. Thurston, a daughter of Charles M. Thurston, of the city of New York. In 1844, Mr. Thurston died intestate, leaving a large estate, principally personal. The proportion to which Mrs. Barrington was entitled amounted to about $20,000. A correspondence took place between C. C. Barrington, who was engaged in business in Philadelphia, and his wife's family in New York, in which it was agreed that $10,000 of Mrs. Barrington's portion of her father's estate should be secured to her separate use. As a part of this arrangement, Barrington purchased a house in Collonade row, and gave a mortgage upon it, (together with a bond and warrant of attorney,) to Charles M. Thurston, of New York, his wife's brother, for $6,000. This sum was made up of $5,000 remitted from New York, by Thurston, as part of his sister's share, for the purpose of making the purchase, and $1,000, part of a larger sum, in which Barrington had become indebted

[*Smethurst v. Thurston.*]

to his father-in-law. A declaration of trust was made and executed, on the same day, (15th May, 1845) by C. M. Thurston, that the bond and mortgage were held by him for the sole use of Mrs. Barrington.

On the 21st of November, 1845, Henry Pratt M'Kean and others, sued out of the court of common pleas of Philadelphia county, a writ of domestic attachment against C. C. Barrington, when the complainants were appointed trustees by the court, and filed this bill to set aside the settlement on Mrs. Barrington, alleging that it was fraudulent and void, as against the creditors. It was shown that Barrington was insolvent at the time of the settlement:

*Gerhard,* for complainants.
*P. P. Morris* and *Tyson,* contra.

BELL, J.—The simple question is, whether the mortgage and accompanying declaration of trust in favour of Mrs. Barrington, are good against the husband's creditors. I think the case admits of no doubt. The father of Mrs. Barrington having died shortly after her intermarriage with C. C. Barrington, leaving a large estate, it was agreed between Barrington and his wife's relatives, that $10,000 of her fortune should be settled upon the wife. Her fortune seems to have amounted to $20,000. This was effected by the purchase of a house in this city, with funds advanced by C. M. Thurston, as the executor of his father's estate, including $1,000, part of a debt due the estate from Barrington, with the express understanding they were to be so applied; and a mortgage was given on the house for the use of Mrs. Barrington. Now what was there to prevent this? Not the insolvency of Barrington at the time, for this could only come into question when there was an attempt to settle property of his own upon his wife. But what was, in fact, settled were *her* choses in action. Now the husband, in making a settlement, has done nothing

[ Smethurst *v.* Thurston. ]

more than equity would have compelled him to do, had he sought its aid to acquire possession of the fund. In *Rees* v. *Waters*, 9 Watts 90, it is said, a suit to protect the equity of the wife may be instituted by her against a creditor of the husband: and see *Kenny* v. *Udall*, 5 Johns. Ch. R. 464; *Haviland* v. *Myers*, 6 Johns. Ch. R. 25.*

But it is asserted that the sum settled on the wife is too large. I do not think so. No settlement is extravagant which is not more than sufficient for the support of the wife; *Wickes* v. *Clarke*, 8 Paige 161. In that case there was a settlement of the whole of the wife's property, the husband being insolvent; and the same thing is said in our case of *Rees* v. *Waters*, 9 Watts 90. Here the wife's property was $20,000—one-half, yielding an income of $600, is not too much.

But there is another ground upon which, if necessary, I think this transaction might be supported. The distributive share of the father's estate was a chose in action of the wife; *Wildman* v. *Wildman*, 9 Ves. 174; *Garforth* v. *Bradley*, 2 Ves. Sen. 675; 4 R. 182; and it is certain that until the husband reduces such choses into possession, his creditors cannot touch them. If he declines to do so, and prefers the property to remain in his wife, the creditors have no right to object; *Dennison* v. *Nigh*, 2 Watts 90; *Parsons* v. *Parsons*, 9 N. H. 321. But it is not every receipt of the husband that will transfer the property to him. Whether, in the exercise of his marital right, he *intends* to vest the property in himself, may be still inquired into. Though the presumption is so, *primâ facie*, it may be repelled by circumstances; *Wall* v. *Tomlinson*, 16 Ves. 414. As in *Hinds' Estate*, 5 Wh. 138, where the wife's bank stock was transferred in the name of the husband, but he gave a refunding bond to the executor, it was held not to be vested in him. So where the husband acknowledged to have re-

* See 1 Am. Leading Cases, 74—76.

[*Smethurst v. Thurston.*]

ceived it as a loan; *Gray's Estate,* 1 Barr 327. So, the receipt of the wife's money, by the husband, for the purpose of investing it in real estate, for her benefit, will not so vest it in the husband as to entitle his creditors to attach it for the husband's debts; *Timbers* v. *Katz,* 6 W. & S. 290. Now what more did the husband do in this case? The fund was received for a special purpose, and if it were necessary, it might be held that it never vested in him. This remark is equally applicable to the $1,000 debt due from him to the estate.

Wherefore, it is ordered, adjudged and decreed, that, the deed of mortgage executed by Charles Connor Barrington to Charles M. Thurston, and the declaration of trust made by the latter, in favour of Rachel H. Barrington, being a good and valid settlement at law and in equity, the bill be dismissed with costs.*

---

* Since the decision in the text, the act of 11th April, 1848, has provided that "every species and description of property, whether consisting of real, personal or mixed, which may be owned by, or belong to, any single woman, shall continue to be the property of such woman, as fully after her marriage as before; and all such property, of whatever name or kind, which shall accrue to any married woman, during coverture, by will, descent, deed of conveyance, or otherwise, shall be owned, used and enjoyed by such married woman, as her own separate property; and the said property, whether owned by her before marriage, or which shall accrue to her afterwards, shall not be subject to levy and execution for the debts or liabilities of her husband." (*Pamph. p.* 536.) Since the passage of this act, a married woman must be considered a *feme sole* in regard to any estate of whatever name or sort, owned by her before marriage, or which shall accrue to her during coverture by will, descent, deed of conveyance, or otherwise. The act works a radical and thorough change in the condition of a *feme covert.* She may dispose of her separate estate by will or otherwise, as a *feme sole.* Her property is hereafter exempted from levy and execution for the debts or liabilities of her husband, except in certain specified cases; and she cannot be deprived of it, either by her husband or any other person, without her express consent; *Cummings' Appeal,* 1 Jones 272; *Goodyear* v. *Rumbaugh,* 1 Harris 480. But this act had no retroactive effect, so as to interfere with rights vested in the husband or his creditors at the time of its passage; *Lefever* v. *Witmer,* 10 Barr 505. To remedy this last decision, however, the act of 22d April, 1850, appears to have been passed, which provides that the true intent and meaning of the act of 1848 is, that the real estate of any married woman shall not be subject to execution for any debt against her husband, on account of

any interest he may have therein as tenant by the curtesy; but the same shall be exempt from levy and sale for such debt, during the life of the wife. (*Pamph. p.* 553.) And it was ruled, in *Gamble's Estate*, that if the wife dies before the husband, intestate, seized of an estate of inheritance, he will be entitled to enjoy the same during his life, in the same manner as a tenant by the curtesy consummate at common law. But during the life of the wife, he can neither sell, lease, charge or in any way affect her real estate, having no present interest therein, nor any future interest, except as distributee under the intestate law. 1 Pars. Eq. Cases, 489.