## Beyer *against* Reesor.

The declaration and separate examination of a married woman, required by the Act of 27th March 1832, to entitle her husband to the share of her intestate father's estate secured by recognizance in the Orphans' Court, must be *filed* during the lifetime of the wife; otherwise, at her death, it will go to her heirs at law.

ERROR to the Common Pleas of *Lancaster* county.

The Commonwealth for the use of George Keller, administrator of Ann Beyer, deceased, against John Reesor and Christian Reesor. This was an action of debt upon a recognizance in the Orphans' Court. On the 16th December 1839, a petition was presented for the purpose of obtaining a partition or valuation of the estate of Christian Reesor, deceased, and an inquest was thereupon awarded. On the 18th February 1840, the inquest made report, dividing the real estate into three parts, No. 1 being valued at $8175.81. On the 18th March 1840, the report being confirmed, purpart No. 1 was taken at the appraisement by John Reesor, who, with Christian Reesor, entered into a recognizance to the Commonwealth, conditioned for the payment to the widow and legal representatives of the said deceased, the proportions to which they were respectively entitled out of the value of purpart No. 1, on the 1st April 1840, with interest thereon. At the time this recognizance was taken, and at the death of Christian Reesor, intestate, there were three children of the deceased, viz., the two defendants and Ann, intermarried with David F. Beyer. On the 1st May 1840, Ann Beyer made a declaration under the 48th section of the Act of 27th March, 1832, that she was willing that her share, stated to be $2721.45, might be paid to her husband without any condition or security whatever. This declaration was acknowledged the same day before Judge Dale, but was not filed at that time. Before the declaration was filed, to wit, on the 15th September 1840, Ann Beyer died. On the 17th March 1841, the declaration of the deceased wife was filed in the Orphans' Court. In April 1841, David F. Beyer, the husband, died, having first made his will, appointing George Keller his executor, who took out letters of administration upon the estate of Ann Beyer, deceased, and brought this suit for the purpose of distributing the money to be recovered, among the next of kin of the deceased husband, to the exclusion of the next of kin of the wife. No debts of the wife were shown or alleged to exist. The mother of Ann Beyer, and the defendants, her two brothers, claimed to be entitled to the money to the exclusion of the next of kin of David F. Beyer, and opposed the plaintiff's recovery.

The court below delivered the following opinion to the jury : which was the subject of exception by the plaintiff.

(LEWIS, President.)    The decision in *Yohe* v. *Barnet*, (1 *Binn.* 365), in which it was held that the sum awarded to the wife for her portion of the real estate of her father was personal estate, and liable to be applied to the discharge of her husband's debts, although her real estate could not have been thus applied, was never satisfactory to the profession.   The proceedings in the Orphans' Court were for the purpose of division, not conversion, and the partition, being by act of the law, and not by act of the party, should not receive such a construction as to work injury to any of the parties.    And as the land of the wife could not be taken in execution for the payment of the husband's debts by any direct proceeding known to the law, the same thing should not be permitted to be done by indirection.    But the decision having been made, it was submitted to, although a determination was evinced not to carry the principles which governed that case beyond the case itself, or others exactly similar.    It was held that where a feme covert died after an appraisement in proceedings for partition, and after the heirs had respectively refused to take it at the appraisement, and after a sale had been actually ordered, her interest remained as land, and her husband surviving was not entitled to the money raised by the sale.   *Ferree* v. *Elliot*, (8 *Serg. & Rawle*, 312).    The same principle was recognised as the law in *Withers's Appeal*, (14 *Serg. & Rawle*, 185).   In these cases, an order to convert the estate into personalty was not considered as having the same effect as a direction to sell in a will, or an agreement of sale ; these latter, being the acts of the party, would have the effect of converting the real estate into personal, upon the principle in equity, that whatever was directed or agreed to be done, was considered as done.    And when, for the purpose of paying legacies, a testator directed land to be sold by his executors, the surplus reverted to the heir as real estate, and not to the executor as personal estate.   *Wilson* v. *Hamilton*, (9 *Serg. & Rawle* 424).

In *Shaupe* v. *Shaupe*, (12 *Serg. & Rawle* 13), it was held that the annual interest of one-third of the valuation of real estate, payable to the widow under the intestate law, is subject to a sheriff's sale as land, because issuing out of the land.   In partition between parceners, where the partition is effected by awarding to the parties the premises for terms of years alternately, although terms are generally regarded as personal estate, and as such go to executors, yet in the case here mentioned they are considered real estate, because the object was to divide and not to convert the real estate into personal.   *Co. Litt.* 4 *a* 167 ; *Alnatt* 144.   If rent be granted for owelty of partition, without words of limitation, yet it shall descend to the heirs of the grantee, because it came to her in respect of the land which should descend to the heir.  1 *Vern.* 133 ; *Alnatt* 133.   There is a diversity, in the effects of proceed-

[Beyer v. Reesor.]

ings which are by act of the law, and proceedings by act of the party. Whatever is by act of the law, is done without working wrong to any one. If a term of years, or money granted to equalize a partition, or money awarded to a widow in lieu of dower, are regarded as real estate because they come to the party in respect of land, then the money awarded to a wife in lieu of her interest in her father's real estate, should also be regarded as real estate, because it comes to her in respect of the land, and comes without any act of her own to change its character from real to personal estate. These remarks are made to show the judicial leaning in favour of preserving the character of the wife's real estate, and against all changes which would alter its course of descent, and deprive the wife or her heirs of its enjoyment, in favour of those who are strangers to her blood. A strong evidence of this inclination is to be found in the remarks of the present Chief Justice in the case of *Ferree* v. *Elliot*, (8 *Serg. & Rawle* 315). "For myself," says that Judge, "I shall never consent to give effect to a claim by the husband, or those in his stead, to what was at any time the wife's real estate, when it is possible to defeat it, by any construction, however forced." This is strong language, but it rests upon the impregnable foundation of natural justice, and has ample support in the conscience of every enlightened chancellor. Equity will not assist the husband to obtain possession of his wife's personal estate, which belongs to him by the marriage, without insisting upon a suitable provision for her; but his claim upon her real estate, for more than the tenancy by curtesy given by the contract of marriage, "is without a particle of equity," and therefore, a husband would not be assisted, on any terms, in turning her real estate into money. 8 *Serg. & Rawle* 315.

The case of the wife was considered one of peculiar hardship, when the power and influence of her husband over her were considered, and the want of a chancery power in our courts to insist upon a suitable provision was taken into the account. Influenced by these considerations, the commissioners to revise the civil code recommended, and the Legislature passed the Act of 29th March 1832, the 48th section of which expressly directs that the money "shall be paid after the husband's death to the wife, or, if she shall not survive him, to her heirs as if the same were real estate." Nothing can divert it from this course of distribution but the consent of the wife given under the guards carefully provided by the Act. The consent must be in writing, and acknowledged separate and apart from her husband before one of the Judges of the Orphans' Court where the proceedings are had, if she reside in the county, and her declaration and acknowledgment must be certified by the same Judge, and filed of record in the said Orphans' Court." Now, it must be remembered, that the declaration of the wife was not filed of record in the Orphans' Court until nearly a year after it was made, and until more than six months after

[Beyer v. Reesor.]

the death of the wife, and the rights of her heirs had become vested. A descent cast tolls the entry of one having right. It may also have the effect of putting an end to a claim of one having no right and not a particle of equity. The claim of the husband must be made out strictly under the law, or it fails. The filing of the wife's declaration in the Orphans' Court, was a necessary step to complete his right. This was required in order that the whole matter might be under the supervision of that tribunal, in order that the transaction might be immediately known to the friends of the wife, and measures at once taken to correct any compulsion or undue influence of the husband in obtaining it. It was also proper to file the paper, that the character of the property might be known as well as fixed. In this, the creditors of the husband might have an interest, who might be greatly incommoded by permitting him to keep the paper in his pocket, with power to file it or not, and thus at his pleasure make the property subject to his debts or not. It was necessary that the paper should be filed, in order that the court might make the proper order directing the money to be paid to the husband. But the paper was not filed, and no such order was made or applied for, until the rights of the wife's heirs had vested by her death. It must be remembered, that this declaration of the wife is not an assignment for a valuable consideration paid. It is merely a power to receive, given to the husband without any value paid by him. If it be in the nature of a letter of attorney, it is revoked by the death of the wife. If it be a legal assignment to the husband, his representatives, as he survived, ought to have brought the action upon it. In the case of a deed not recorded, as required by the recording acts, equity will remedy the omission against the grantor, or against a purchaser with notice of the previous sale and conveyance. But this is because a consideration has been paid, and it is a fraud in the grantor to sell the land again, and also a fraud in the purchaser having notice to buy it, and thus deprive the party of that for which he had rendered value. Equity always aids where a valuable consideration has been paid. But, in this case, nothing has been paid to entitle the claim to the favourable consideration, or extraordinary aid of a Court of Chancery. The claim is a strictly legal one, or it is nothing. "It is without a particle of equity." It might also be said, that it is against equity, as it is certainly against the common feelings of natural justice that the real estate of the wife should be taken from her mother and brothers and given to those who are strangers to her family. The husband's representatives depend entirely on a legal claim under the Act of 1832. This they have failed to establish, as the paper was not filed, nor any order obtained awarding the money to the husband, until after the rights of the defendants as heirs of the wife had vested. Influenced by these reasons, the court instruct the jury, that under the evidence in the cause, the plaintiff is not entitled to recover, and that the defendants are entitled to a verdict.

[Beyer v. Reesor.]

*Long* and *Stevens,* for plaintiff in error, cited 2 *Whart.* 246 ; 7 *Watts* 563; 1 *Binn.* 364; 6 *Johns.* 112; 7 *Watts* 159; 3 *Bro. Chan.* 240.

*Frazer,* contra, cited 9 *Watts* 529 ; 16 *Serg. & Rawle* 60 ; 7 *Watts* 217 ; 4 *Whart.* 22 ; 3 *Whart.* 309.

PER CURIAM.—The reasons given for the opinion of the Common Pleas are so full to the purpose, and in such entire accordance with the sentiments of this court, that nothing material remains to be added. Were not the real estate of a wife involved in the question, it might admit of the possibility of a doubt whether filing the certificate of record is an integrant part of the act, which dispenses with the husband's duty to give the security, though the words of the statute naturally and necessarily import that it is. It is put on a footing with the separate examination, declaration and certificate; all of which are to be perfected before the wife's title is devested. But were the statute less explicit, the policy which has induced this court to exact a strict compliance with the requirements of the statutes in respect to conveyances of the wife's land, as well as to restrain her from exercising a power over her separate estate not contained in the settlement, would induce us to decide the point before us in favour of the defendants. We are of opinion, therefore, that the filing of the certificate after the wife's death, was not a compliance with the statute.

Judgment affirmed.