*Orphans' Court, Dauphin County, February 23d, 1863.*

## IN THE MATTER OF SNYDER'S ESTATE.

The interest of an heir in the share set apart for the widow, is the same as in the other portions of the estate, and hence, when the land of a decedent was taken by the heirs under the appraisement, and the widow's third charged upon the land, upon her death the estate of a deceased feme covert heir will go to her husband's assignee for the life of the husband, and after his death, to her heirs at law.

BY THE COURT.—Partition was made of the real estate of Nicholas Snyder, among his widow and children, during the years 1836 and 7, and a certain portion was charged thereon for the widow during life. She died in the year 1862, and the money is now in court for distribution.

That part thereof allotted to Hannah, wife of David F. Hoffman, is claimed by her children and by Thomas Harper, to whom it was assigned by her husband in the year 1846. Mrs. Hoffman died in the year 1845, leaving issue and her husband surviving, all of whom are still living.

It is not pretended that Mrs. Hoffman ever signed a writing under the 48th section of the act of 1832, agreeing that her husband might receive her distributive portion of her father's estate, and the only open question under the decisions is, has the heir the same interest in the share set apart for the widow of a decedent that she has in the other portions of her father's estate, arising from the proceedings in partition? Every other question is settled by the plain words of the act of 1832, and the judicial decisions thereon.

Under our former statutes it was much lamented by the judges that they had not the power to secure a feme covert heir her interest in her ancestor's estate in cases where it was turned into money in making partition (Yohe *v.* Barnet, 1 Binn. 365, Ferree *v.* Elliott, 8 S. & R. 315, same book, 172, and other cases). To remedy which, the framers of the code made provision in the 48th section of the act of 1832, that the husband should not receive his wife's portion paid in money for owelty, or allotted in any other manner in lieu of her real estate, without the separate declaration of the wife in the method therein prescribed, that

she desired the same to be paid over to him.   In the absence of such declaration, the Orphans' Court would require him to give security that such portion as it should deem proper must be paid to her heirs after her death, the same as if it had remained real estate, and on his failure so to do, the court was authorized to place the money in the hands of trustees, to be held for the use of the husband during life, and for the wife's heirs after his death. So strict has been the construction of this act and of the doings of the parties under it, that we find soon after its passage the Supreme Court decided in Walter's Estate (2 Wharton, 246), where a feme covert declared her willingness for her husband to receive her distributive share before she knew the exact amount thereof, such declaration was not valid or binding, but might be revoked.   And again in Beyer v. Reesor (5 W. & S. 501), where the declaration was made and duly acknowledged in the lifetime of the wife, but was not *filed* as required by the statute, the writing was *void*, and the husband could not receive the money.   Taking it as settled law that the husband cannot obtain the money allotted to the wife for her distributive share in making partition of her father's estate, in what particular does the portion set apart for the widow during her life, differ from the fund distributed?   We are unable to perceive that it stands in any different situation. If the land itself is parted and divided into as many portions as there are heirs, each must pay the widow the sum charged on it respectively.   If one heir takes the whole at a valuation, the amount to be paid to each heir and the widow is designated; but that to be received by the widow is for life only, after which it goes to the heirs precisely as it would have gone had it been distributed at the time of partition.   It must be divided as the land itself would have been, and partition of the fund is only suspended during the widow's lifetime.   Whilst this fund is in the hands of the widow, it is not treated as money but as land, of which she is tenant in dower, is in the nature of rent-charge, with like remedy by distress to enforce payment (4 Wright, 176–7).   It is real not personal property (11 Casey, 189, 190), and must be conveyed as other real estate (3 W. & S. 456), can be sold by the sheriff as the widow's estate (3 Barr, 69), and if so sold as the property of the heir, she is entitled to claim rent as other landlords, out of the purchase-money.

The distinctive character of the original estate as dower is kept up, although it is land converted into money for a special purpose.   The interest of Mrs. Hoffman, her husband and children, in the fund allotted to the widow of Nicholas Snyder, stands precisely as it did at the time of partition, and must be disposed of on her death, just as it would have been at that time.

David F. Hoffman was, before partition, tenant by curtesy in the real estate belonging to his wife, and under the act of Assem-

bly referred to, was entitled to the money awarded to her in lieu of her share of the land, on giving security, to the satisfaction of the Orphans' Court, that the amount thereof should be paid to the wife if she survived him, or to her heirs if he survived her, the same as if it had been land; or in case of his inability or refusal to give the security, the money must be invested in the hands of a trustee for the use of the husband during life, and for the wife's heirs after his death, thus keeping up the curtesy estate. No security was ever given by the husband, consequently neither he nor his assignee is entitled to the money in court, but it must be given over to some trustee to be appointed by the Orphans' Court, and placed at interest, which must be paid to Harper as assignee of Hoffman, during the lifetime of the latter, and on his death the principal must be distributed among the heirs at law of his deceased wife Hannah, precisely as the land would have gone had it never been converted into money.

We have been referred to a number of authorities by the counsel of Mr. Harper, to prove that when land is converted into money, under a judicial proceeding, it must be distributed ever afterwards as money, and no longer retains its original characteristic. Such is the case of Grider *v.* Grider's Admin'r, 11 S. & R. 224; Dyer *v.* Cornell, 4 Barr, 359; Ebbs *v.* The Commonwealth, 1 Jones, 374; and Pennel's Appeal, 8 Harris, 515; and many others might have been cited to the same effect. But upon examination it will be found that none of them have any application to the present case, are precisely what this would have been, independent of the act of 1832. They are sales made by executors, administrators, guardians, or trustees, for the payment of debts, or maintenance of minor children, and none of them are conversions of land into money by proceedings in partition, which is regulated by a different statute; and such was the law of this case when Yohe *v.* Barnet, and Grider *v.* Grider's Administrator, was decided.

On the facts stated, the Orphans' Court must order the money to be invested in the hands of a trustee, for the use of Harper during the life of Hoffman, and for the heirs of Hannah Hoffman after his death.