# Timbers *against* Katz.

Where land is bought by and conveyed to a daughter, whose mother assists her to pay for it with money paid on a bond of her own the proceeds of her land, such money is not necessarily to be taken to have been reduced into possession by the husband of the mother, merely because he joined her in the receipt given to the obligor, if the husband never exacted the payment of the bond and the money did not pass through his hands and he exercised no act of ownership over it.

Between the husband and wife his possession of a chose in action may be qualified by his intention and the ownership follows his will, and it is the same even against creditors or their trustees under the insolvent act.

A verdict and judgment in ejectment are not evidence against one not a party or privy in another ejectment for the same land, and where the same title is in dispute.

ERROR to the Common Pleas of *Montgomery* county. This was an ejectment for a messuage and two acres of land in White-marsh township, brought by John Katz, trustee of John Scheetz, an insolvent debtor, against Jonathan Timbers and Mary Ann his wife, late Mary Ann Scheetz, in which a verdict and judgment were rendered for the plaintiff below.

Both parties claimed under the title of Nicholas Freas. The plaintiff showed a deed for the property in dispute from Nicholas Freas to the defendant, Mary Ann Scheetz, daughter of John

[Timbers v. Katz.]

Scheetz, for the consideration of $615, dated 1st April 1830, and recorded 16th Feb. 1835. In April 1835, John Scheetz applied for the benefit of the insolvent laws, and on the 17th May 1836, made an assignment to the plaintiff, who gave bond. The plaintiff further showed an application by John Scheetz on the 19th August 1822, for the benefit of the insolvent laws, with an endorsement thereon of the 15th January 1823, " application refused by the court." The creditors returned were John Rex, security in $100 for a bond given to the German United Assistant Society; John Rex, judgment, $400; estate of Thomas Shepherd, dec'd., $100, and a note of Leonard Streeper for $5. Return, " property all sold by the sheriff." It appeared also that on the 25th May 1822 John Scheetz gave bond to take the benefit of the insolvent laws with John Wrighter security in $200, and that to April term 1823, John Rex sued John Scheetz and John Wrighter on the bond and recovered $156.17½, and $81.60 costs, and Wrighter paid Rex on the 8th August 1826, the sum of $235.87½ in full. To November term 1832, Wrighter brought suit against Scheetz, and on the 25th November 1834, recovered a judgment for $350, and costs $46.25, but remitted all but $350, and issued a *fi. fa.* and *ca. sa.*, on which Scheetz was arrested on the 22d April 1835, but was discharged on giving bond to take the benefit of the insolvent laws. Jacob Culp was indemnifying bail to Wrighter, and paid Wrighter, who marked the suit to the use of Culp's administrators. Wrighter testified that Scheetz never paid a cent and would not pay: that he always said Rex should never have it: he was determined to cheat him out of it: that he owned a lot at Chestnut Hill which Rex had sold, and he would not pay this.

The plaintiff then called witnesses to show the circumstances of the sale in 1830. Samuel Hiltner testified that in 1830 he agreed to buy the lot now in dispute from Nicholas Freas for $600. Some of Scheetz's family sent him word they wanted to see him. Freas and he went there together. Elizabeth, the wife of John Scheetz, wanted to buy, and he agreed to let her have it for $615, and the deed should be made to her. An evening was appointed, and when they came the article was made in the name of Mary Ann Scheetz, (then about 22 or 23 years old), who paid $100 and signed the article. Scheetz did not interfere. Scheetz and wife and daughter, Squire Keltner the scrivener, and Nicholas Freas were present. Scheetz lived there most of the time. Nicholas Freas testified that Scheetz was originally his tenant. At the request of Hiltner he made the deed to Mary Ann: $100 were paid when the articles were signed, and $315 when the deed was made. A mortgage and bond were then executed by Mary Ann for $100, and $100 was left on the property for the dower of Freas's mother, and still remained. The last $100 was paid in 1832 or 1833, by Mrs Scheetz. Freas received interest 2 or 3 years. Mrs Scheetz paid part of the interest, if not the whole.

[Timbers v. Katz.]

She appeared the principal actor. Did not know of Mary Ann paying him any part of the purchase money. Mrs Scheetz lived there. On his cross-examination he stated that Leonard Culp brought the money.

It was admitted Mrs Scheetz was a daughter of Leonard Culp, whose will was proved in November 1824, giving the residue of his estate to his children, and on settlements in 1828 and 1832, the balance of $5979.63 was in the hands of the executors. Also that under the will of her mother Elizabeth Culp proved in 1831, she was entitled to a share, the balance on settlement being in August 1833, $3598.53. And further, that under the will of her grandfather, Andrew Bower, proved 1st Dec. 1795, she acquired a legacy of £50 and a lot of land of 30 acres. This land she sold to Leonard Culp, who gave her a bond for it in her own name as Elizabeth Scheetz, about the year 1821, and he paid her $205 of it at her request when the deed was executed by Nicholas Freas. He had paid her interest every year, and a portion of the principal from time to time as she wanted it: he never paid her husband any. Mary Ann brought some money of her own out of the next room, enough to make up the payment after what he brought. Receipts to the executors were shown, one of 10th May 1831 for $23.40; one of 10th May 1831 by John Scheetz for $52.93, balance according to auditor's report, and one of 13th April 1833, by John Scheetz and Elizabeth Scheetz, for $300, part of her mother's estate. Samuel Culp, who was an executor of her father and mother's estate, stated the payments he made were to Elizabeth Scheetz: John Scheetz got no part of it. She claimed and insisted on having it as her own: it had come from the estates of her grandfather and grandmother and father and mother. John Scheetz was present and he was then very poor. The plaintiff gave further evidence as to the circumstances of Mary Ann, going to show her inability to pay the money.

The defendants then produced the deed dated April 1st 1830, from Nicholas Freas to Mary Ann Scheetz; a mortgage executed same day by Mary Ann Scheetz to Nicholas Freas and bond accompanying the same for $100 payable April 1st 1831 with interest, and receipts endorsed for interest paid by Mary Ann Scheetz 27th May 1831, and by Elizabeth Scheetz 21st April 1832, and receipt of Nicholas Freas to Mary Ann Scheetz, for $100, 25th January 1830, the day when the article was signed.

They then called Elizabeth Scheetz, who stated that Mary Ann was the purchaser. She sent for Freas and made the bargain with him for $615, of which $75 was to be paid down. After the articles were written, she paid him a $100 note and took a receipt for it. When the deed was written, she made up the remainder of the money $315 and gave her mortgage for the $100. The first $100 was her money, which she had saved on working out. The witness then stated the various places Mary Ann had worked

at, and the wages she got; that she borrowed $215 of witness to purchase the lot. The money came from witness's grandfather's estate, in payment of a bond given her by Leonard Culp. She was to live in the place till Mary Ann wanted it herself. She lived there till Mary Ann married Timbers, some time after which she was put out by the sheriff. Afterwards she got possession again. The money from her father and mother's estate was paid to witness; her husband never had part of it.

The defendants also showed the record of a recovery by Jonathan Timbers and wife against John A. Sutton and John Katz, trustee of John Scheetz, co-defendant, in November 1840.

The plaintiffs in reply offered the record of an ejectment, No. 55, August term 1836, brought by John Katz, trustee of John Scheetz, an insolvent debtor, against John Scheetz, in which there was a verdict for the plaintiff on the 23d October 1837, with proof that it was for the same house and lot and that the same title was given in evidence on both sides. The defendant objected to the admission of this in evidence, but it was admitted and exception taken.

The defendant gave further evidence to show that Mary Ann Scheetz had earned money of her own by going out to work and was able to make the payments she did out of it.

The court charged the jury as follows:

The plaintiff has shown, that in 1835, John Scheetz applied for the benefit of the Insolvent Laws, and that on the 17th May 1836, he made an assignment to Katz, the plaintiff, of all his estate, real, personal and mixed. On the 23d May 1836 Katz gave bond and accepted the trust. In pursuance of this trust this ejectment is brought. It is in evidence that John Scheetz was indebted principally to John Rex. His bail had to pay Rex. In 1823 a suit was brought, and in 1825 a verdict and judgment against Scheetz and Wrighter, his bail. In 1826 Wrighter paid the amount, $235.07. Afterwards, in 1832, Wrighter brought an action against Scheetz, and in 1834 a verdict and judgment were obtained for $350. A *fieri facias* issued, and a *capias ad satisfaciendum* also, and John Scheetz was arrested. He then gave bond and was discharged, as we have before submitted to you, and Katz, the plaintiff, appointed his trustee. His discharge was opposed, and he was compelled to amend his schedule of property by the court, and return " all his right, title and interest of the petitioner in and to a messuage and lot of land situate in Whitemarsh township, Montgomery county, adjoining the Ridge Road turnpike and lands of Philip Fye, the widow Lentz and others, now in the occupancy of the said petitioner." The plaintiff has shown you, and it is admitted, Nicholas Freas was the owner of the house and lot in question, and John Scheetz was in possession as his tenant up to the year 1830. The plaintiff has given in evidence the deed of the 1st April 1830, Nicholas Freas to Mary Ann Scheetz, the daughter of John Scheetz.

[Timbers v. Katz.]

The defendants have also given the deed in evidence, and both parties claim under it. Who paid the $600, the consideration money? or rather, whose money was it? Was it an honest transaction, or was it made to defraud the creditors of John Scheetz? These questions you will consider under the evidence. You have evidence that Mrs John Scheetz, by her father and grandfather and grandmother, was devised a share of their estates. You have heard how and when these legacies and devises were paid. You have heard how John Scheetz was poor and indebted in 1830. How his wife received the money coming to her from the *devises* of her relatives, and how the daughter, Mary Ann, went out to service some seven or eight years prior to 1830. The first payment was made on the 25th January 1830, of $100. The receipt is in Mary Ann's name, and in part payment of the purchase money. Whose money was this? On the one hand, it is said to be Mary Ann's earnings; on the other, it is said to have been the money her father and mother received from the devises before-mentioned. On the 1st of April 1830, nine or ten weeks after the first payment was made, a further sum of $315 was paid. Whose money was this? You have the old lady's *account, which is, that* she lent to Mary Ann $200, and the $115 was paid by Mary Ann. There was a dower of $100, which still remains on the premises, and Mary Ann gave her bond and mortgage for $100, which made the whole consideration. You have heard how the $100 was paid on the 20th April 1833. This $100 was paid by Elizabeth Scheetz, and receipted for in the name of Mary Ann on the bond. Whose money was this? We will not pretend to detail minutely the whole of the evidence. We ask you carefully to consider it, and we will call your attention to certain legal principles which will result in the case, if you find the facts in a certain way.

When a husband joins in a release or receipt for a legacy, and it is paid to the wife, it is strong *primâ facie* evidence it comes to his possession, and that he has a control over the money. This may be repelled by evidence. Marriage is, in effect, a gift of the wife's personal estate in possession; it may be said to be a conditional gift of her chattels in action, such as debts, contingent interests, money owing her on account of intestacy. The husband has a right to make them his own by virtue of his wife's power over them, lodged by the marriage in his person. Here the legacies to the wife were reduced into possession by his releases and receipts; but it is said she retained possession of the money, and it is contended by the defendant, that after his release he had a right to permit her to vest this money in real estate for their mutual benefit, notwithstanding he was indebted, and in this way defeat his creditors. If you so find the facts, is not the result that the husband had some interest in this investment; and if he had such interest, we instruct you it passed to Katz, the plaintiff, by the assignment. It is well settled that the trustees of an insolvent debtor possess

[Timbers v. Katz.]

all the right of his creditors to set aside a fraudulent or irregular assignment. It is a general principle, that the possession of the wife is the possession of the husband, and it will take evidence to negative this; and when it is reduced to the wife's possession by his release and receipt, I know of no case where the wife can invest it to the exclusion of his creditors for his benefit as well as the benefit of his family. If the jury find her money was so invested, then it is fraudulent and void, as against his creditors, and all his interest in the premises passed to his assignee, the plaintiff in this cause. We are now to consider the defendant's points:

1. " That payment·to·a married woman, with the assent of the husband, of a legacy bequeathed to her, is not of itself a reduction by him in possession." As an abstract proposition, this is true.

.2. " That when a legacy is actually paid to the wife, with the assent of the husband, and she invests it in the purchase of real estate, and takes the deed in the name of another, the property is not liable to the creditors of the husband." This would be true when the husband is not indebted, but if the jury find that the money was invested for the benefit of the husband and his family,. to defraud his creditors, it will be void as to them, and all his interest in the premises will pass by the assignment.

3. " That even if the legacy was actually received by the husband, but not afterwards treated as his own, the title of the wife remains unimpaired." If the husband was not in debt at the time, and solvent, we see nothing in this proposition that would be wrong; but we cannot see its applicability to a case where the husband is insolvent at the time he receives the money and permits it to be vested for his future benefit and that of his family, to the exclusion of his creditors.

4. " That if John Scheetz suffered and permitted his wife to use and invest the consideration money arising from the sale of the real estate devised to her in and by the last will of her grandfather, without exercising any control over it himself, or interfering with her disposition of it, and she made a loan or gift of the same to her daughter, the daughter thereby became the absolute owner of the money; and if she purchased the premises in question with the same, her title to the said premises is good, as against the trustee of her father under the Insolvent Laws, and the plaintiff is not entitled to recover." This would be true if John Scheetz was not then indebted, and had no further interest in the premises. But was there a loan or gift? We submit to you whether this was not a family concoction after the money was received, and when the creditors of John Scheetz were pressing him for their debts, to defeat those creditors. If the jury find it was so, and that John Scheetz had a future interest, and it was concocted to defeat his creditors, it would be void as to those creditors to the extent of that interest.

The jury will inquire whether Mary Ann had any money to

pay; and if she had none, and the house was bought with Elizabeth Scheetz's legacy to defeat the creditors of her husband, and for his future benefit, it would be void as to those creditors. The marriage contract is for better and for worse, and whenever the husband reduces a bequest to his wife into possession, it is then his. When money is so received, and he is insolvent, it cannot be vested to defeat his creditors, and for his future benefit and that of his family; nor can the wife vest it when it is received with his assent to exclude his creditors for their joint benefit.

If the jury find that Mary Ann by her labour paid a part of the purchase money, I think she ought to be protected to that extent. It is conceded to be an honest transaction on the part of Nicholas Freas, the grantor. The assignment of John Scheetz is only of his interest in the house and lot. His interest would only be to the extent of his money vested in it. The suit is not to set aside the conveyance of Freas further than that the plaintiff alleges the property bought by John Scheetz's money. The plaintiff claims under it, and the interest of the creditors of John Scheetz is to the extent of his interest in the premises. If she paid $100, she would be entitled to one-sixth; if $200, two-sixths, or one-third: if $300, to one-half, and so on. If she honestly and *bonâ fide* bought the property and paid her money, and borrowed more to pay for it, it would be her property, and she and her husband would be entitled to your verdict. But if you find that she and her father and mother concocted this plan of conveyance to defeat the father's creditors, and the father's and mother's money paid for it, after the father had assented to his wife's receiving this money, and that it was to be held for their future benefit, there ought to be a general verdict for the plaintiff.

The jury gave a verdict for the plaintiff for an undivided five-sixths of the land, and for the defendant for the other one-sixth.

Errors assigned :

1. The court erred in admitting in evidence the record of the suit, John Katz, trustee of John Scheetz, an insolvent debtor *v.* John Scheetz, to August term 1836, No. 55.

2. In charging the jury that when a husband joins in a release or a receipt for a legacy, and it is paid to the wife, it is strong *primâ facie* evidence it comes to his possession, and that he has a control over the money.

3. In charging the jury: " Here the legacies to the wife were reduced into possession by his releases and receipts."

4. In their answer to the defendant's 2d point.

5. In their answer to his 3d point.

6. In charging the jury as follows, in answer to the defendant's 4th point: " This would be true if John Scheetz was not then indebted and had no further interest in the premises. But was there a loan or gift? We submit to you whether this was not a family concoction after the money was received, and when the

[Timbers v. Katz.]

creditors of John Scheetz were pressing him for their debts, to defeat those creditors."

7. The court charged the jury that the legacies to Elizabeth Scheetz were reduced into possession by the receipts of her husband, without adverting to the fact that no receipt for or on account of said legacies was signed by him until long after the execution of the deed, and all the purchase money had been paid except the $100 for which Mary Ann Scheetz had given her bond and mortgage, and without referring in any way to the evidence in the cause tending to repel the fact of such reduction into possession by the husband.

8. The charge assumes that there was evidence of a fraudulent design, on the part of Mary Ann Scheetz and her father and mother, to defraud the father's creditors, when there was no evidence in the cause to warrant the court in so doing.

*Mulvany,* for plaintiffs in error. The main question is whether the wife's money was reduced into possession by the husband's receipt, so that land purchased with it in the name of another, belonged, as regards creditors, to the husband. We say it was not. A bond or note given to the wife, with the husband's permission, is not a reduction into possession; *Clancy on Marr. Wom.* 353; nor will her merely receiving the money, where she immediately reinvests it, alter her right even as to creditors, if the intention is that it should not belong to the husband. *Hinds's Estate,* (5 *Whart.* 143), where it is said the effect of reduction into possession depends on the intent with which it is accompanied, and that is matter of evidence. In that case it was decided that bank stock bequeathed to the wife during coverture remained hers, though transferred absolutely to the husband, on evidence of his acts and declarations. The effect cannot be different if the debtor pay the money and the husband disclaim all ownership, and the wife reinvest it. Nor is there any reason for a distinction whether there are creditors or not. 3 *Dess.* 155; 2 *Call* 376; 1 *Bac. Ab.* 481. The intervention of creditors makes no difference in the case of a bankrupt or insolvent assignment by the husband; 1 *Ashm.* 334; *Wintercast* v. *Smith,* (4 *Rawle* 184); and for the same reason the husband may permit the wife to receive the money and reinvest it, without thereby rendering it liable to creditors. It was, therefore, error to say the receipt was a reduction into possession, and withdraw the question from the jury. *Newbold* v. *Wright,* (4 *Rawle* 195); *Nieman* v. *Ward,* (1 *Watts & Serg.* 82); 1 *Wash. C. C.* 70.

*Hancock* and *Sterigere,* contra. Husband and wife are one, and that is the husband. She has no separate will, and can do no act without his consent. If she received the money with his consent, it became *eo instante* his money, and his assignment passed it

VI. — 38

whether in money or land.  The husband's assignment carries
the wife's interest in her choses in action; *Richwine* v. *Heim*, (1
*P. R.* 373) ; *Siter's Case*, (4 *Rawle* 481); and it is clear that be-
fore the receipt of the money, the husband might have assigned
it.  The cases cited from *Clancy* and 2 *Call*, are of the wife's
separate estate.  In 3 *Dess.* 155, there were no creditors.  So in
*Hinds's Estate;* and there was also an arrangement between the
husband and wife that it should be her property.  *Wintercast* v.
*Smith*, (4 *Rawle* 184), was a case of desertion, and there was no
pretence of the husband's receipt.  He never made any claim to
the legacy.

The opinion of the Court was delivered by

Gibson, C. J.—This ejectment is brought by the trustee of an
insolvent husband, against the husband's daughter, whose mother
assisted her with the proceeds of the mother's bond, to pay for
land which the daughter had purchased; and the plaintiff insists
that the money must be taken to have been in the husband's pos-
session, because he signed the receipt for it : consequently that his
creditors may follow it into the land.  It was proved that the bond
had been a security for the price of land sold by the wife when she
·was sole; that the husband, though struggling with poverty, had
not enforced the payment of it, or exercised any act of ownership
in respect to it, till his wife gave the money to their daughter to
make up a payment for the land on which the family were living;
that the daughter paid another part of the purchase money with
her own earnings, and that she mortgaged the land for the residue.
There was no evidence that the husband had exacted the money
from the obligor, or that it had passed through his hands on its
way to his daughter's vendor; or that the husband had taken part
in the transaction, farther than to sign the receipt, which was ne-
cessary to discharge the obligor's responsibility.  Did that con-
stitute reduction to possession ?

There was an evident design that it should not; and it is an
undoubted rule, that between the wife and the husband himself,
his possession, even in fact, may be qualified by his intention, as
it was in the case of *Hinds's Estate*, ʹ(5 *Whart.* 138), where an ab-
solute transfer of her stock was qualified by his certificate that it
was received as a loan.  In the case at bar, the husband neither
handled the money nor did more than was necessary to accom-
plish the wife's purpose by discharging the bond.  The act was
not reduction into possession in contemplation of law, because, as
was said by Lord Eldon, in *Wall* v. *Tomlinson*, (16 *Vez.* 413), in
regard to a transfer of the wife's stock to her husband as a trustee,
it was done *diverso intuitu.*  The sum of the matter is, that the
ownership follows the husband's will; for the law will not cast it
on him against his consent.  Take the case of a wife who sells
her land to invest the price of it in other land as her separate es-

[Timbers v. Katz.]

tate, and whose husband joins her in the conveyance and the receipt for the purchase money, as he necessarily must, but with no view of making it his own; surely thāt would not give him a resulting trust in the land. Now that is the case before us, except that the feme's land was sold by her before her coverture, and the price of it was invested by the daughter, to whom it was given in her own name. If the husband's title must necessarily intervene by reason of the temporary conversion, there can be no way for a feme covert to part with land for land, except by exchange, and that could seldom be effected. If there were not creditors in the way, then the law of the case would be clear for the defendant; and how far does the intervention of their interest affect it?

It must be taken for granted, that the husband refused to touch the money purposely to keep it out of their reach. There was evidence from which the jury might have inferred it, and the fact was doubtless so. Was that a fraud? To have been defrauded, the creditors must have had an interest in the money such as the law would recognize and protect; but they could not have had such an interest, unless the ownership was in their debtor. The stat. 13 Eliz. would operate on nothing less. Now, though marriage is an absolute gift of the wife's chattels in possession, it is but a conditional gift of her choses in actions. To speak more accurately, it is perhaps a gift of her power to dispose of them to himself, or any one else, by force of the dominion to which he has succeeded as the representative of her person. Not to dispute about terms, it is enough for the argument that the gift of the thing, if there be one, is on a condition precedent which must be performed to vest the title, and the husband has not the semblance of ownership in the mean time. If there is a gift of the title on a condition subsequent, what is the contingency which must happen to divest it? Death, without reduction to possession, would not be a condition, but a conditional limitation; and if a limited title resides in the husband during his lifetime, why might not his creditors acquire it by the process of the law, and reduce the chose into possession in his place? It may be said, that the common law has no process by which the title to a chose in action can be reached. The husband's conditional title then, is an unsubstantial thing, and the creditors' derivative interest in it moonshine: for what is the value of a right which cannot be enforced? Yet it is said, that such a right may be prejudiced by a fraud! Choses in action could not indeed be taken in execution at the common law, but they might always be reached by attachment; yet it was ruled by this court, in *Dennison* v. *Nigh*, (2 *Watts* 90), and *Robinson* v. *Woelpper*, (1 *Whart.* 179), that a wife's outstanding legacy cannot be attached for the husband's debt, because the husband has no property in it. These cases are authorities in point, for they stand on the very principle which lies at the root of the present defence. A wife's chose in action passes by the husband's

[Timbers v. Katz.]

assignment under the insolvent laws, only because it is a voluntary transfer of it for valuable consideration, and an exercise of all his power. Taking the gift then to be conditional, he surely has a right to reject it by refusing to perform the condition. The law certainly does not cast it upon him beyond his power of resistance; for every gift requires the assent of the donee. As to her chattels in possession, indeed the husband has no choice, for her user of them is his user, and whatever benefits her benefits him; consequently, her possession and acts of ownership are his possession and acts of ownership. But a right of choice residing in his person as the representative of his wife, cannot be severed from it or controlled; and on what principle may a creditor insist that he shall exercise it in a particular way? Now, as a creditor must claim through his debtor, and not paramount, the plaintiff, representing the husband's creditors, stands, in relation to the land in contest, in no greater equity than the husband stood before his assignment. But before that time he had suffered his wife to part with her money, and no trust resulted to him by the investment of it in land purchased in the daughter's name.

The record of the plaintiff's recovery against the father seems to have been erroneously received in evidence to affect the daughter, who does not seem to have been party or privy to it. It could be made competent only by showing that the father was her tenant; and if the fact were so, there would have been no need of an ejectment directly against herself and her husband. It is certainly not enough that the former ejectment was for the same land, on the same title, and under the same deed by which the parties at present claim: it is necessary beside that the parties be the same, or stand in privity with those who were.

Judgment reversed, and a *venire de novo* awarded.