## Moyer's Appeal.

1. By the common law the receipt by a husband of his wife's choses in action, was presumed to be a reduction of them to his possession, and this presumption could be overthrown only by proof of a positive, clear, precise and consistent intention to the contrary existing at the time of receiving them.

2. The wife's property must come into his possession *quasi* husband, or she takes as survivor instead of his personal representatives.

3. Conversion of the wife's property is not reduction into possession; it is only evidence of it; and may be explained by other evidence negativing the intention of its having been reduced to possession, so as to transfer the title to the husband.

4. Declarations of the husband when receiving the wife's money or choses in action, or afterwards, clearly evincive of his intent at the reduction into possession, are sufficient to repel the presumption of personal acquisition and establish the relation of trustee for the wife.

5. In this case the husband in 1837 received the wife's money from her guardian, promising then and afterwards that he would give her a note for it; on her importunity he gave her a note in 1850. In view of the mutual confidence arising from the marital relation the delay in giving the note, did not rebut the presumption that he received the money as trustee for the wife.

March 3d. 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON and PAXSON, JJ.

Appeal from the Court of Common Pleas of *Berks county:* Of January Term 1875. In the distribution of the estate of Simon Moyer, assigned for the benefit of his creditors.

On the 8th of March 1870, Simon Moyer assigned his estate to Peter D. Wanner, for the benefit of his creditors.

The assignee, on the 23d of June 1871, filed an account of his administration of the trust. Wharton Morris, Esq., was appointed auditor to distribute the balance in the hands of the assignee. He found that, after deducting the expenses of audit, &c., the balance for distribution was $3748.07. Amongst the claims presented to the auditor, was that of Mary Moyer, wife of the assignor, upon the following note:

"$1780.                                        April 1st 1850.

"I promise that I became indebted to Mary Moyer in the sum of $1780—money that is current in Pennsylvania, and this I promise to pay when or to whom it may be assigned, with lawful interest, as a lien-note for the property for her inheritance money.

"With my hand and seal,      SIMON MOYER, [L. S.]

"ELIZABETH her ✗ HOCH."
                mark.

[Moyer's Appeal.]

In support of this claim, S. Moyer, the assignor, testified before the auditor : * * *

" The first I got was about $1000; I did not get it all in one sum. Before spring had come, I got $800. Stanly Kirby paid it to me. In the spring I got the balance. I think I was married in 1836. Stanly Kirby was my wife's guardian. My wife was seventeen or eighteen when I married her. My wife did not want to let me have the money without a note. I told her I would give her a note, but I put her off. My wife gave Kirby a release. Before she released, she said she would not do it without I gave her a note, and I promised to do so. Kirby gave me the money, $800,. at his house. I gave her the note because I owed her the money. The $200 I got also from Kirby, the spring after I got the $800. I also paid that on account of the land. My wife and I agreed the note should be for $1780, at the time it was given; we reckoned out the interest on the amount I had received, and it all came to more than that; but she was satisfied with that. She has had the note in her possession ever since. I paid on it occasionally; the payments are endorsed on the note. The reason I gave the note at the time I did, was, she had been insisting upon giving a note from the time when I got the money. At the time I gave the note, I had bailed some person at court. This made her restive, and she insisted absolutely on a note. She wanted to have a right for the money—a note (security) that would bind the land. While we were going over to the justice's to get the money and release for it, my wife demanded a note, and I promised to give it to her. This was about 1837, and then I got the money."

Mary Moyer, the wife, testified :

" This note was given on the day it bears date. * * * There was some difficulty between us. He went bail, for whom I can't say. Then we were agreed that the amount he received was $1000, at first, and that the interest would amount to this note. He really got something more than $1000. I think he got it in 1837. * * * The reason I did not take a note in 1837, when I gave him the money, was, he promised to do it, but did not. I was young at the time. Stanly Kirby was my guardian, and there he got it. I never saw the money. Can't say for sure how much it was. It must have been $1000, something more, but whether he got it all at once I don't know. * * * This was out of my first inheritance."

The auditor reported * * * "At the time of Mrs. Moyer's marriage, her guardian, Stanly Kirby, had in his hands upwards of $1000 belonging to his ward, from her father's estate. This money Moyer received from the guardian in several payments. It appears that Mrs. Moyer did not want her husband to have this money without a note, and refused to join in a release to her guardian, unless he would give her a note; that she constantly im-

[Moyer's Appeal.]

portuned him to fulfil his promise, but in his own words, he ' put her off,' until, becoming alarmed by his having bailed some persons, she renewed her entreaties, and insisted positively on having a note, and then he gave the note on the day it bears date, the amount being made up of what he had received from Kirby, with the interest thereon added. Some interest was paid on the note, which Moyer says he had paid to keep it alive.

" The allowance of this note, is objected to on the ground that Moyer having received and used this money, there is nothing to rebut the presumption that he intended to assert an absolute title to it. The auditor thinks the evidence is insufficient to repel this presumption. If Moyer had given a note at the time he received the money, or even shortly afterwards, the question of intention would be easily solved, but this note was not given until some fourteen years afterwards. His wife, by her perseverance, made it impossible for him to defer the matter longer, without affecting the marital relations and disturbing its peace." * * *

The auditor rejected the claim of Mrs. Moyer.

On exceptions by Mrs. Moyer to his report, the Court of Common Pleas, Hagenman, J., dismissed the exceptions, and confirmed the report.

Mrs. Moyer appealed to the Supreme Court and assigned for error, the decree of the Court of Common Pleas dismissing her exceptions and confirming the report of the auditor.

*A. G. Green*, for appellant.—Moyer having got his wife's money by a deliberate and clear agreement to repay to her, and that he would give her a note for it, it cannot be claimed that he received it under the purpose to hold it absolutely under his marital rights : Johnston *v.* Johnston, 7 Casey 454; Wesco's Appeal, 2 P. F. Smith 195 ; Gicker *v.* Martin, 14 Wright 138; Wall *v.* Tomlinson, 16 Vesey 413 ; Timbers *v.* Katz, 6 W. & S. 290 ; Gray's Estate, 1 Barr 327 ; Woelper's Appeal, 2 Id. 71 ; Gochenaur's Estate, 11 Harris 460 ; Bergey's Appeal, 10 P. F. Smith 408.

*G. F. Baer*, for appellee.—The husband reduced his wife's chose in action into possession, and this being before the Act of 1848, his ownership was absolute : Tritt *v.* Colwell, 7 Casey 232. His will determined who should own her choses in action : 2 Kent 135; Siter's Case, 4 Rawle 468; Timbers *v.* Katz, 6 W. & S. 290 ; Woelper's Appeal, 2 Barr 71; Swoyer's Appeal, 5 Id. 377 ; Clevenstine's Appeal, 3 Harris 499 ; Nolen's Appeal, 11 Id. 37.

Mr. Justice MERCUR delivered the opinion of the court, May 10th 1875.

The common law gave to the husband an absolute right to his

wife's choses in action, if he reduced them to his possession during coverture. The receipt of them by him was presumed to be a reduction to his possession. That presumption could be·overthrown only by proof of a positive, precise, clear and consistent intention to the contrary existing at the time of receiving them.

While the law thus gave to the husband the right to reduce them to his own possession, it did not impose on him any obligation so to do. He could decline making this personal acquisition. It was a privilege he could waive and receive them for the benefit of, and in trust for, his wife. The property must come under his actual control and possession *quasi* husband, or the wife took as survivor instead of the personal representative of the husband: 2 Kent's Com. 138. His receiving it as executor or as trustee is not a sufficient reduction of it to his possession to prevent its surviving to his wife: Baker *v.* Hall, 12 Vesey 497; Wall *v.* Tomlinson, 16 Id. 413.

This distinction has been repeatedly affirmed in this state. Conversion is not reduction to possession but only evidence of it. Conversion may therefore be explained by other evidence negativing the intention of its having been reduced to possession in such a manner as to transfer title to the husband: Hess' Appeal, 1 Watts 255; Hinds' Estate, 5 Whart. 138; Timbers *v.* Katz, 6 W. & S. 290; Gray's Estate, 1 Barr 327; Woelper's Appeal, 2 Id. 71; Gochenaur's Estate, 11 Harris 460.

. Declarations made by the husband at the time of receiving the wife's money or choses in action, or afterwards, clearly evincive of the intent at the moment of reduction to possession, are sufficient to repel the presumption of personal acquisition by him, and establish the relation of trustee for the wife: Johnston *v.* Johnston's Executors, 7 Casey 450; Gicker's Administrators *v.* Martin, 14 Wright 138.

Now, by the evidence of the husband himself the intent with which he received can be more satisfactorily established.

In this case the auditor found, that at the time of the marriage of the appellant, her guardian, Kirby, had in his hands upwards of $1000 belonging to her, from her father's estate; that her husband received this money from her guardian in several payments; that the appellant did not want her husband to have this money without a note, and refused to join in a release to her guardian unless he would give her one; that she constantly importuned him to fulfil his promise; but that he "put her off," until, becoming alarmed by his having "bailed some persons," she renewed her entreaties and he gave her the note, some thirteen years after he obtained the money.

The auditor omits to find the fact specifically whether the evidence does or does not show clearly, distinctively and positively, that Moyer received the money under an agreement made at the time,

negativing the presumption that he received it as his own property. Inasmuch, however, as the note was not given until so many years thereafter, and Moyer had received and used the money, he infers the evidence is insufficient to rebut the presumption that Moyer intended to assert an absolute title to it.· Looking then at the evidence which the auditor returned with his report, we discover this uncontradicted testimony in regard to Moyer's agreement under which he received the money. He testifies " my wife did not want to let më have the money, without a note; I told her I would give her a note, but I put her off; my wife gave Kirby a release. Before she released, she said she would not do it, without I gave her a note, and I promised to do so. Kirby gave me the money, $800, at his house." · On being recalled, he testified further, " while we were going over to the justice's to get the money and release for it, my wife demanded a note, and I promised to give it to her; this was about 1837, and then I got the money." He also testified, that he got $200 from Kirby the spring after he got the $800.

Thus it appears, by the uncontradicted evidence of the husband, that he received this money not under or by virtue of his marital rights, but under his clear, distinct and positive promise to give her his note for it. It was a promise which he made immediately preceding his obtaining the first and principal part of the money. It was the agreement under which he received the whole of the money. It is true, he was not obliged to accept the money on those terms, but he consented to do so. He thus assumed a trust, by which in equity the money remained the property of his wife, although it passed into his actual possession. There is no act or declaration of either Moyer or his wife calculated to weaken this conclusion, save his delay in giving the note. We think that circumstance alone, wholly insufficient to overthrow the other evidence. The mutual confidence, existing between them, undoubtedly delayed giving the note. The facts found by the auditor, do not justify the legal inferences he drew therefrom, and the learned judge erred in confirming his report.

The receipts and release, given in evidence by the appellees, show the last money Moyer received was on the 24th of March 1837; he should therefore be chargeable with the $1000, and interest thereon from that date. The assignment is sustained; therefore,

> Decree reversed, and record remanded to the court below, for distribution, to be made conformably to this opinion, and it is ordered that the costs of this appeal be paid by the appellees.